<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHORAB SARKER<br>*Plaintiff,*<br>v.<br>CITIGROUP, INC. and VIKAS PATHAK,<br>*Defendant.* | Civil Action No. 24-08517<br><br>**OPINION**<br><br>February 7, 2025 |

**SEMPER,** District Judge.

Before the Court is Defendant Citigroup, Inc.'s ("Defendant" "Citigroup") motion to compel arbitration and stay *pro se* Plaintiff Shorbar Sarker's ("Plaintiff") Complaint. (ECF 8, "Def. Br.")  Plaintiff filed a brief in opposition to Defendant's motion. (ECF 10, "Opp.") Defendant filed a reply in further support of its motion. (ECF 12, "Reply".)  The Court reviewed the Complaint (ECF 1-1, Ex. A, "Compl.") and the parties' submissions, and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion is **GRANTED.**

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the termination of Plaintiff's employment with Defendant Citigroup. Plaintiff alleges[1] that Defendants retaliated against, threatened, harassed, and wrongfully terminated him for internally reporting Citigroup employees "Pillu Pillalmarri, Vikas Pathak, Ravi

---

[1] Plaintiff is proceeding *pro se*, and as such, is entitled to considerable leeway.  *See Marcinek v. Comm'r*, 467 Fed.Appx. 153, 154 (3d Cir. 2012) (holding that courts are "under an obligation to liberally construe the submissions of a pro se litigant").  This Court construes Plaintiff's submissions in that liberal spirit.

De Silva et al.," for numerous offenses, including "soliciting various FINRA credentials [and] hoodwinking regulatory bodies" in violation of the New Jersey Conscientious Employee Protection Act ("CEPA") (N.J. Stat. Ann. § 34:19-1), New Jersey Law Against Discrimination ("NJLAD") (NJ Rev. Stat. § 10:5-12), and "Common Law."  (Compl. ¶ 1.)

Plaintiff originally filed this employment discrimination and retaliation action on February 29, 2024 in the Superior Court of New Jersey, Middlesex County, Civil Division against Defendants Citigroup, Inc. and Vikas Pathak.  (*Id.*)  On August 16, 2024, Defendant removed the action to this Court.  (ECF 1, Civil Cover Sheet.)  Defendant filed the instant motion on August 28, 2024, seeking to compel arbitration of Plaintiff's claims and stay the present proceedings.  (*See* Def. Br. at 1.)

II.     **STANDARD OF REVIEW**

The Court must first determine what standard to apply in analyzing Defendant's motion to compel arbitration.  "Where the affirmative defense of arbitrability of claims is apparent on the face of the complaint (or . . . documents relied upon in the complaint)," courts apply the Federal Rule of Civil Procedure 12(b)(6) standard to decide a motion to compel arbitration.  *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 773-74 (3d Cir. 2013).  However, the Rule 12(b)(6) standard is inappropriate when the complaint does not contain the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement[.]" *Id.* at 774 (internal quotations and citations omitted).

In that event, "a district court should employ the standard used in resolving summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure." *Id.* At 771

2

(internal quotations and citations omitted); *see generally* Fed. R. Civ. P. 56.  In *Guidotti*, the Third Circuit explained that

> if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Id.* at 776.

This Court must evaluate the present motion in accordance with Rule 56, because Defendant's arbitration defense is not clear from the face of the Complaint.  Defendant maintains that Plaintiff must arbitrate his claims because of a contractual provision between the parties entitled "The Employment Arbitration Policy" (hereinafter "Policy"). (Def. Br. at 2.)  Plaintiff, however, does not rely on or reference this or any other document related to arbitration in his Complaint. (*See* Compl. ¶ 1.)  Accordingly, the Court must go beyond the face of the pleading to evaluate arbitrability under the summary judgment standard of review.  Neither party contends that discovery is necessary.  Moreover, Plaintiff has not raised additional facts sufficient to place the agreement to arbitrate in issue such that additional discovery is necessary.  As a result, the Court will decide Defendant's motion under the Rule 56 standard without providing the parties leave for limited discovery. *See, e.g.*, *Kamineni v. Tesla, Inc.*, No. 19-14288, 2020 WL 57867, at *2 (D.N.J. Jan. 6, 2020).

Under Rule 56, a moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* When evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson,* 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(c)(1)(A). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250-51. This standard of review enables the district court to "ensure[e] that arbitration is awarded only if there is an express, unequivocal agreement to that effect." *Guidotti*, 716 F.3d at 775 (internal quotation omitted).

III. <u>ANALYSIS</u>

The Federal Arbitration Act ("FAA") "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009) (citing 9 U.S.C. § 1 *et seq*.). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to

enforce agreements to arbitrate . . . and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (internal quotations omitted). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Id.* Instead, "[b]efore compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

To determine the validity of an arbitration agreement, courts apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The Policy at issue states: "This Policy shall be governed by the Federal Arbitration Act (Title 9 U.S.C.) ("FAA")." (ECF 8-2, Ex. C). Defendant cites to federal and New Jersey law to argue that there was a valid agreement to arbitrate. (Def. Br. at 6.) In his moving papers, Plaintiff alleges violations of the New Jersey discrimination and employment law. (*See* Compl. ¶ 1; Opp. at 1.) Accordingly, the Court will apply New Jersey law to assess whether there was an agreement to arbitrate.[2]

To be enforceable pursuant to New Jersey law, an arbitration agreement "must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim." *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1104 (N.J. 2003). Moreover, "[a]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014) (quoting *NAACP of Camden Cnty. E. v. Foulke Mgmt.*, 24 A.3d 777, 790 (N.J. Super. Ct. App. Div. 2011)).

---

[2] *See Manley Toys, Ltd. v. Toys R Us, Inc.,* No. 12-244737, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

5

Mutual assent requires that the parties understand the terms to which they purportedly agree. "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" *Atalese*, 99 A.3d at 313 (quoting *Foulke*, 24 A.3d at 790-91).

> The Policy provides:
>
>> This Policy applies to both you and to Citi, and makes arbitration the required and exclusive forum for the resolution of all employment-related disputes (other than disputes which by federal law are precluded from arbitration) between you and Citi (including Citi's predecessors, successors and assigns, its current and former parents, subsidiaries and affiliates and its and their current and former officers, directors, employees and agents) which are based on legally protected rights (i.e., statutory, regulatory, contractual or common-law rights), including disputes based on legally protected rights that are submitted to but aren't resolved by the Dispute Resolution Procedure. Therefore, you are waiving your right to bring your disputes in court or to have your disputes heard by a jury. This Policy applies to both existing and future disputes, including any disputes based on conduct that occurred before this Policy.

(ECF 8-2, Ex. C.) On July 17, 2020, Plaintiff signed and acknowledged the Policy (ECF 8-2, Ex. D). On the same day, Plaintiff also signed and acknowledged Citigroup's US Employee Handbook ("Employee Handbook"), executing a signature statement which reads:

> I UNDERSTAND THAT THE EMPLOYMENT ARBITRATION POLICY, WHICH IS A STANDALONE AGREEMENT CONTAINED IN APPENDIX A, IS A BINDING AGREEMENT BETWEEN CITI AND ME.
>
> […]
>
> I understand that appended to this Handbook is an Employment Arbitration Policy as well as the "Principles of Employment" that require me and Citi to submit employment-related disputes to binding arbitration (see Appendix A and Appendix D). I understand that it's my obligation to read these documents carefully. I also understand that no provision in this Handbook or elsewhere is intended to constitute a waiver, nor be

6

> construed to constitute a waiver, of my or Citi's right to compel arbitration of employment-related disputes

(*Id*.) Additionally, Plaintiff signed an offer letter on June 11, 2020, which states:

> Any controversy or dispute relating to your employment with or separation from Citi other than controversies or disputes that by law are not arbitrable will be resolved in accordance with Citi's Employment Arbitration Policy, the terms of which are incorporated in this letter. A copy of the Employment Arbitration Policy is attached for your signature.

(ECF 8-2, Ex. B.) Defendant did not provide the Court with a signed copy of the Policy that was attached to the June 11, 2020 offer letter.

Plaintiff does not dispute that he signed the Policy, the Employee Handbook, or any other accompanying documents. Instead, Plaintiff challenges the enforceability of the Policy because "it was signed under duress without fully disclosing its legal implications." (Opp. at 1.) Plaintiff also argues that the Policy is unconscionable because it is one-sided and heavily favors Citigroup by allowing them to control the arbitration process and select the arbitrator. (*Id*.) Finally, Plaintiff contends that his claims under the NJLAD and CEPA involve statutory rights that cannot be waived or arbitrated. (*Id*. at 2.)[3]

Plaintiff, however, has failed to identify any specific facts or affirmative evidence to support his claims. Plaintiff only conclusory states that he was under duress when signing the Policy. (*See* Opp. at 1.) To demonstrate that there is a genuine issue of material fact regarding the enforceability of the agreement to arbitrate, Plaintiff "must present more than just 'bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.'" *Podobnik v. U.S.*

---

[3] Plaintiff proffers various other arguments, including that any mutual agreement to arbitrate is void because Defendant generally engaged in misconduct and wrongfully terminated Plaintiff, and that Defendant waived its arbitration rights because it has actively participated in this litigation. The Court finds these arguments meritless.

*Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 325).  Plaintiff has not met this burden.[4]

Plaintiff's arguments are not supported by the record.  The Policy specifically discloses that "you are waiving your right to bring your disputes in court or to have your disputes heard by a jury."  (ECF 8-2, Ex. C.)  Though Plaintiff alleges that the Policy grants Defendant control over the arbitration process and selection of the arbitrator, the Policy plainly states that "neutral arbitrator(s) shall be appointed in the manner provided by AAA or FINRA rules, as applicable." *Id.*  Lastly, Plaintiff's claim that his statutory rights cannot be arbitrated contradicts the text of the Policy and binding precedent.  *See id.* ("This Policy. . . makes arbitration the required and exclusive forum for the resolution of all employment-related disputes. . . which are based on legally protected rights (i.e., statutory, regulatory, contractual, or common-law rights)"); *see Lerner v. Citigroup,* No. 16-CV-1573 , 2019 WL 1579512, at *1 (D.N.J. Apr. 12, 2019), *aff'd*, 838 F. App'x 682 (3d Cir. 2020) (compelling arbitration of NJLAD among other statutory claims).

Plaintiff agreed to arbitrate all employment disputes with Defendant by signing the Policy, which "makes arbitration the required and exclusive forum for the resolution of all employment-related disputes" (ECF 8-2, Ex. C), and the Employee Handbook, which states "I UNDERSTAND THAT THE EMPLOYMENT ARBITRATION POLICY, WHICH IS A STANDALONE AGREEMENT CONTAINED IN APPENDIX A, IS A BINDING AGREEMENT BETWEEN CITI AND ME."  (*Id.*)   This language is clear and unambiguous and constitutes a valid and enforceable agreement to arbitrate.  *See Sarbak v. Citigroup Glob. Markets, Inc.,* 354 F. Supp. 2d 531, 541 (D.N.J. 2004) (finding valid agreement to arbitrate where Plaintiff signed Citigroup's three arbitration documents with analogous language) ("Here, Plaintiff signed three distinct

---

[4] Nor does Plaintiff cite any valid legal authority to support his claims.  The Court has been unable to identify any of the case law cited in Plaintiff's opposition papers.

documents each containing arbitration provisions.  Her actions constitute a concrete manifestation of her assent.").  Plaintiff's arguments to the contrary are unavailing.

The Court must next address whether the claims at issue fall within the scope of the arbitration agreement.  *See Century Indem. Co.*, 584 F.3d at 522.  The Policy specifically states that arbitration is the "exclusive forum for resolution of all employment-related disputes." (ECF 8-2, Ex. C.)  The Complaint alleges Plaintiff was retaliated against, threatened, harassed, and wrongfully terminated by his employer—all relate to his employment at Citigroup.  (*See* Compl. ¶ 1.)  Plaintiff's claims therefore fall squarely within the scope of the parties' agreement to arbitrate.

### IV.    PLAINTIFF'S LETTER REQUEST

Plaintiff filed a motion for reconsideration before this Court on January 29, 2025.  (ECF 22).  A motion for reconsideration is "an extremely limited procedural vehicle" which is to be granted "sparingly."  *Cnty. of Essex v. Aetna, Inc.*, No. 17-CV-13663 (SDW) (CLW), 2019 WL 3842761, at *1 (D.N.J. Aug. 15, 2019) (internal citations omitted).  "Mere disagreement with a court's decision is not an appropriate basis upon which to bring a motion for reconsideration as such disagreement should 'be raised through the appellate process.'"  *Aetna*, 2019 WL 3842761, at *1 (quoting *U.S. v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999)).

On January 23, 2025, this Court adopted Judge Allen's Report & Recommendation ("R&R"). (ECF 18.)  Plaintiff failed to timely object to Judge Allen's R&R.  Plaintiff then asked the Court to consider his untimely objection to the R&R.  (ECF 20.)  This Court declined to modify its Order adopting the R&R.   (ECF 21.)  Plaintiff now requests his untimely objections be reconsidered.  (ECF 22.)  Plaintiff's motion for reconsideration is procedurally deficient under Local Civil Rule 7.1(i), because it does not identify "an original motion by the Judge" among other

9

deficiencies. (L. Civ. R. 7.1(i)). Accordingly, Plaintiff's letter request is **DENIED** on this procedural basis.

## V.  FAILURE TO SERVE DEFENDANT PATHAK

Defendant Pathak has not been served with the Complaint, nor has he appeared in this action. Defendant Citigroup included in its notice of removal that Pathak "does consent to this removal." (ECF 1 ¶ 2.) Because Defendant Pathak was not properly served with the Complaint within 90 days of filing as required by Federal Rule of Civil Procedure 4(m), he is dismissed from this action.

## VI.  CONCLUSION

For the reasons stated above, Defendant's motion to compel arbitration (ECF 8) is **GRANTED** and the current matter is **STAYED**. Plaintiff's motion for reconsideration (ECF 22) is **DENIED**. An appropriate Order follows.

>  */s/ Jamel K. Semper*
>  **HON. JAMEL K. SEMPER**
>  **United States District Judge**

Orig:  Clerk
cc:  Jessica S. Allen, U.S.M.J.
   Parties